UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ARNIE JUDKINS and
PHILLIS JUDKINS

      Plaintiffs,   Civil Action No. 13-12357

  v.          Honorable Gerald E. Rosen
               Magistrate Judge David R. Grand

HSBC MORTGAGE SERVICES,

      Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) [4]**

**I. RECOMMENDATION**

Before the Court for a report and recommendation is Defendant HSBC Mortgage Services ("HSBC") Motion to Dismiss Pursuant to Fed R. Civ. P. 12(b)(6). [4]. For the reasons set forth below, IT IS RECOMMENDED that HSBC's motion be GRANTED.

**II. REPORT**

  **A. Background**

    *1. Plaintiffs' Previously Dismissed Case Against HSBC*

On August 27, 2012, Plaintiffs Arnie Judkins and Phillis Judkins filed suit in the Wayne County Circuit Court against HSBC and five additional defendants to quiet title to real property located at 276 King Street, Detroit, MI 48202, and to remove the mortgage from the property. Plaintiffs served the other defendants but failed to properly serve HSBC. The other defendants removed the matter to this Court, where it was assigned to Chief Judge Rosen as Civil Action No. 12-cv-14706. The other defendants then filed a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

which was granted on January 10, 2013. *See* No. 12-cv-14706, Docket #18. Because HSBC had not been properly served, Plaintiffs' claims against it were dismissed without prejudice. *Id.* Plaintiffs subsequently filed a Fed. R. Civ. P. 60(b) Motion of Relief from Judgment and Motion for Default against HSBC. On April 18, 2013, the Court denied Plaintiffs' motion because they failed to file a proper proof of service. Accordingly, the Court maintained no jurisdiction over HSBC.

### 2. *Plaintiff's Present Case Against HSBC*

On May 6, 2013, Plaintiffs, acting *pro se*, filed the instant complaint against HSBC in Wayne County Circuit Court. HSBC timely and properly removed the action to this Court on May 29, 2013, pursuant to 28 U.S.C. §1332.

This case arises out of Plaintiffs' alleged mortgage relationship with HSBC. In short, Plaintiffs' multi-pronged complaint claims that: (1) HSBC is not a proper assignee of Plaintiffs' mortgage (and therefore has no right to collect Plaintiffs' mortgage payments); (2) HSBC imposed excess charges not authorized under their note; (3) HSBC promised to re-finance their loan, but then breached that promise; (4) HSBC subsequently promised to execute two separate loan modifications with Plaintiffs, but then breached those promises; and (5) HSBC violated Plaintiffs' rights by publishing allegedly false information about Plaintiffs' credit. Plaintiffs characterize their actual claims as follows: Count 1 – Breach of Contract (note); Count 2 – Breach of First Loan Modification Agreement; Count 3 – Breach of Second Loan Modification Agreement; Count 4 – "Gross Negligence Per Se Via Willful Violation of Federal Laws/Regulations Governing Access to Genuine Loan Modification Relief;" Count 5 – Breach of Contract with U.S. Government Agencies Regulating Loan Modification for which Plaintiffs were Third Party Beneficiaries; Count 6 – Promissory Estoppel as to the Loan Modifications;

Count 7 – Invasion of Privacy/False Light/Slander of Credit; Count 8 – Tortious Interference with Business Relations/Prospective Economic Advantage; and Count 9 – Fraudulent/Wrongful Note Enforcement Based on Lack of Title/Standing. Plaintiffs seek $200,000 in damages. HSBC's motion to dismiss argues that all of Plaintiffs' claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) either because their complaint fails to plead sufficient facts to support the claims, or because the claims themselves are not cognizable under law. Accordingly, it is helpful to discuss in detail the specific factual averments contained in Plaintiffs' complaint.[1]

Plaintiffs allege that pursuant to a "Warranty Deed, dated June 22, 1982," they are the current lawful owners of the subject property. Compl. ¶ 1, 5. Plaintiffs allege that HSBC "and/or its predecessors have failed to produce valid assignments" of the mortgage on the subject property to substantiate HSBC's "standing to enforce the note." *Id.* at ¶ 7. Plaintiffs allege that HSBC "improperly" enforced the note and mortgage on the subject property by "imposing excess monthly payment rates and surcharges" not authorized by the note or mortgage, and by "categorically denying Plaintiff[s] access to refinancing to a fixed interest rate, which refinancing had been represented as being routinely available so long as Plaintiff[s] had met certain credit conditions…" *Id.* at ¶ 9. HSBC allegedly "twice induced Plaintiff[s] to comply with . . . stated requirements to qualify for represented and promised Loan Modification relief." *Id.* at ¶ 19. Plaintiffs claim that HSBC's "[r]epresentations of available loan modification … included specific promises constituting Loan Modification relief…" *Id.* at ¶ 11. However,

---

[1] For the purposes of this motion to dismiss, the Court takes as true all well-pleaded factual allegations in Plaintiffs' complaint and construes all reasonable inferences from those allegations in Plaintiffs' favor. *Smith v. Wyeth, Inc.*, 657 F.3d 420, 423 (6th Cir. 2011). Moreover, complaints of *pro se* litigants are construed more liberally than those drafted by attorneys. *West v. Adecco Emp't Agency*, 124 F. App'x 991, 992 (6th Cir. 2005) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). That leniency, however, "does not abrogate the basic pleading requirements designed to ensure that courts do not have to guess at the nature of the claim asserted." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Plaintiffs do not attach any loan modification agreement or specify what the purported "specific promises" were. The most they say is that there were "stated prerequisites" – which they identify only as "successful completion of a specific 'trial period'" – "to the First promised and/or represented Loan Modification Agreements," which they claim they satisfied. *Id.* at ¶¶ 12-13. Plaintiffs claim that despite their performance, HSBC "abruptly canceled" "the first promised Loan Modification," "refus[ed] to extend its terms for even one full year," and imposed unauthorized charges and surcharges on them. *Id.* at ¶¶ 13-14.

Plaintiffs allege that notwithstanding this alleged experience with the purported "first loan modification," HSBC "represented to Plaintiff[s] that a second Loan Modification Agreement was being Instituted, so long as Plaintiff[s] fulfilled certain stated prerequisites…" *Id.* at ¶ 16. Again, however, Plaintiffs do not identify anything about the purported "promise" or "prerequisites." They claim that this "second" loan modification "was finally instituted," but that it was "wholly illusory and offer[ed] no actual relief," because the monthly payment it called for – after including the above-referenced charges and surcharges – was higher than those under Plaintiffs' original note. *Id.* at ¶ 18.

Plaintiffs claim that HSBC's actions "abrogated separate contractual agreements between [HSBC] and select U.S. government agencies," with Plaintiffs being alleged third-party beneficiaries to those agreements. *Id.* at ¶ 20. Plaintiffs allege that they relied on HSBC's promises to their detriment. *Id.* at ¶ 21. Finally, Plaintiffs allege that HSBC "further compounded its wrongdoing by publishing and disseminating nationwide, derogatory matter concerning Plaintiffs' credit which falsely characterized Plaintiffs as violators of credit arrangements…" *Id.* at ¶ 22.

As noted above, Plaintiffs seek damages in excess of $200,000.00 for HSBC's alleged wrongful conduct. *Id.* at ¶23.

### 3. HSBC's Motion to Dismiss

In its motion to dismiss, HSBC argues that none of Plaintiffs' allegations are adequate to state a claim for relief. For nearly every claim, HSBC argues that Plaintiffs' allegations are not adequately specific or are missing required elements. HSBC also argues that the claims in Counts 1, 2, 3 and 6 are barred by the Michigan Statute of Frauds. [4 at 6-7, 11]. For Count 7 regarding slander of credit, HSBC argues that no such claim is recognized as a cause of action in Michigan. [*Id.* at 13].

On July 5, 2013, Plaintiffs responded to HSBC's motion to dismiss. [9]. Plaintiffs argue that they should be allowed to amend their pleadings as a matter of course pursuant to Fed. R. Civ. P. 15(a) because HSBC had not, as of that time, filed a responsive pleading. Plaintiffs presented no additional facts or evidence supporting their claims, and did not address any of the legal arguments HSBC raised in its motion. HSBC filed a reply which mostly reiterated their prior arguments, but which also argued that Plaintiffs misconstrue Rule 15(a), and that they do not have a right to amend their complaint as a matter of right. [10]. Plaintiffs filed an "objection" to HSBC's reply which is not authorized by the Eastern District of Michigan's Local Rules regarding motion and briefing practice. [11]. *See* E.D. Mich. LR 7.1(e)(1).

## B. Analysis

### 1. Motion to Dismiss Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Under Fed. R. Civ. P 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a

5

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *Bredesen*, 500 F.3d at 527 (citing *Twombly*, 550 U.S. at 555-56). Thus, it must contain more than "labels and conclusions," *Twombly*, 550 U.S. at 555, "a formulaic recitation of the elements of a cause of action," *id.*, or "naked assertion[s]" unsupported by "further factual enhancement." *Id.* at 557.

In deciding whether a plaintiff has set forth a plausible claim, the court must accept the factual allegations in the complaint as true. *Bredesen*, 500 F.3d at 527; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a claim from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Howard v. City of Girard, Ohio*, 346 Fed. Appx. 49, 51 (6th Cir. 2009). The court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading." *Clark v. Nat'l Travelers Life Ins. Co*, 518 F.2d 1167, 1169 (6th Cir. 1975). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. 662, 679.

HSBC moves to dismiss Plaintiffs' entire complaint which alleges nine causes of action. The Court will address each in turn.

> a. *Counts 1, 2, and 3 – Breach of Contract (Note/Mortgage and Loan Modification Agreements)*

In Counts 1, 2, and 3 Plaintiffs seek damages arising from HSBC's alleged breach of the original note and mortgage and two subsequent purported loan modification agreements. HSBC argues that these counts should be dismissed because Plaintiffs failed to allege facts sufficient to state a breach of contract claim and because they are barred by the statute of frauds.

Plaintiff's allegations in support of these claims are extremely vague, indeed too vague to support a breach of contract claim, which requires them to allege sufficient facts to establish: (1) the existence of a contract; (2) the terms of the contract; (3) Plaintiffs' performance of the contract; and (4) HSBC's non-performance resulting in damage to Plaintiffs. In Count 1 Plaintiffs allege merely that they entered into an agreement "which contained certain parameters for enforcement" and "specific limitations on the manner in which increases in monthly payments" could be imposed. Compl. ¶ 25. They do not allege any particular term which was breached, or what HSBC supposedly did to breach it. The most they say is that HSBC imposed "excess monthly payment rates and surcharges" not authorized by the note or mortgage, and "categorically den[ied] Plaintiff[s] access to refinancing to a fixed interest rate, which refinancing had been represented as being routinely available so long as Plaintiff[s] had met certain credit conditions…" *Id.* at ¶ 9. But these are just bare unsupported conclusions, not facts, and as such do not state a claim for relief.[2] *Twombly*, 550 U.S. at 555-557; *Iqbal*, 556 U.S. at 678.

---

[2] Although Plaintiffs may maintain alternate theories in their complaint, the Court notes that their assertion about the purported re-financing "representation" implies that it was made extraneous

This was the holding in the very similar case of *Jirjis v. Wachovia*, 2011 WL 87247, at *5 (E.D. Mich. Jan. 11, 2011), in which the plaintiff sued his mortgage lender and related entities, alleging breach of contract. However, the plaintiff's only allegations supporting his breach of contract claim were that the defendants "began to assess excessive interest rate charges beyond the contractual amount allowed," and that they "continued to assess illegal escrow fees, penalties, interest and other illegal charges beyond what was allowed for in the original contract." The court ruled that these allegations, which are very similar to the ones on which Plaintiffs' breach of contract claims rest in this case, failed to provide sufficient factual detail to satisfy *Twombly's* pleading standards. *See also See Ross v. Wells Fargo Bank*, N.A., 2013 WL 5291671, at *5-6 (E.D. Mich. Sept. 19, 2013) (dismissing breach of contract claims based on allegations which were virtually (if not exactly) verbatim of the ones Plaintiffs make here); *Battah* v. *ResMAE Mortgage Corp.*, 746 F.Supp.2d 869, 876 (E.D. Mich. 2010); *Shaya v. Countrywide Home Loans, Inc.*, 2011 WL 1085617, at *6 (E.D. Mich. Mar. 22, 2011) (defendant mortgage company was entitled to dismissal of breach of contract claim where plaintiff failed to identify which provision of loan agreement was breached and how defendant breached that provision). Accordingly, Count 1 of Plaintiffs' complaint should be dismissed.

Plaintiffs' breach of contract claims in Counts 2 and 3 related to purported loan modification agreements fair no better. Plaintiffs state only that HSBC made "[r]epresentations of available loan modification … [and] included specific promises constituting Loan Modification relief…" *Id.* at ¶ 11. Similarly, the allege that the purported loan modification agreement contained "certain parameters for enforcement [] and specific limitations on the manner in which monthly payments could be [increased]…" *Id.* at ¶ 27. However, Plaintiffs do

---

to the underlying note which is at issue in Count 1. Accordingly, violation of that alleged representation cannot support a breach of contract claim with respect to the note.

8

not attach any loan modification agreement or specify any particular "promises," "parameters," or "limitations" at issue. They assert, in the most vague and conclusory terms that HSBC imposed "drastically escalated/increased monthly payment charges and surcharges" not authorized by the purported "first Loan Modification Agreements [sic]." *Id.* at ¶¶ 14, 27. Their allegations with respect to the alleged second loan modification are virtually identical. *E.g. id.*, at ¶ 29 (referencing "certain parameters," "specific limitations," and "unauthorized charge[s]"). For the same reasons discussed above, *supra* at 7-8, these conclusory allegations fail to provide sufficient factual detail to satisfy *Twombly's* pleading standards. *See also Ross*, 2013 WL 5291671, at *5-6. Accordingly, Counts 2 and 3 should be dismissed.

To the extent Plaintiffs' breach of contract claims are based on alleged oral promises by HSBC, they are ripe for dismissal because such claims would be barred by Michigan's statute of frauds. The Michigan statute of frauds prohibits all actions against financial institutions based on alleged oral agreements. According to M.C.L. § 566.132(2):

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing and signed with an authorized signature by the financial institution:
>
> (a)  A promise or commitment to lend money, grant or extend credit, or make any other financial accommodation.
>
> (b)  A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation.
>
> (c)  A promise or commitment to waive a provision of a loan, extension of credit, or other financial accommodation.

*Id.* In a decision holding that promissory estoppel was unavailable for an oral promise to waive a prepayment penalty on a loan, the Michigan Court of Appeals reasoned that this statute amounts

to "an unqualified and broad ban" that bars "all actions for the enumerated promises and commitments, including actions for promissory estoppel." *Crown Tech. Park v. D&N Bank, FSB*, 242 Mich. App. 538, 550 (2000). Although the Michigan Supreme Court has not decided the statute's meaning, the Sixth Circuit has held that it would likely interpret the statute the same way. *See Blackward Properties, LLC v. Bank of America*, 476 F.App'x. 639, 642 (6th Cir. 2012).

As noted above, Plaintiffs did not attach any loan or loan modification agreements to their complaint. Nor did they supply any such documentation with their briefs in response to HSBC's motion.[3] Accordingly, to the extent Plaintiffs' breach of contract claims, each of which relates to matters clearly covered by M.C.L. § 566.132(2), are based on oral promises, those claims should be dismissed. M.C.L. § 566.132(2). *Ross*, 2013 WL 5291671, at *6.

### b. Count 4 – Gross Negligence

Count 4 of Plaintiffs' complaint is entitled "Gross Negligence Per Se Via Willful Violation of Federal Laws/Regulations Governing Access to Loan Modification Relief. Compl. ¶ 29. To state a negligence claim under Michigan law, a plaintiff must allege: (1) the defendant owes a legal duty to the plaintiff; (2) the defendant breached that duty; (3) that breach caused plaintiff's injury; and (4) the plaintiff suffered damages. *Lelito v. Monroe*, 273 Mich. App. 416, 418-19 (2006). Plaintiffs' allegations do not sufficiently plead these elements. The complaint never specifies which federal laws or regulations HSBC allegedly violated, how it committed those violations, or how those violations caused them injury. Instead, much like they did with

---

[3] Plaintiffs did reference a "Pooling and Servicing Agreement" in their response brief [9 at 3], but did not attach it. Moreover, it is unclear if they are referencing an actual document of which they are aware, or a general belief that such a document covering their relationship with HSBC may exist. [*Id.*] ("The Pooling and Servicing Agreement *can be* a standalone document *or it can be* part of another paper…") (emphasis added). Regardless, for the reasons stated above, their bald reference to this purported agreement is insufficient to plead a claim for relief.

respect to their breach of contract claims, Plaintiffs plead only vague conclusory allegations; they allege that HSBC participated in unnamed "federally-supervised programs for loan modification," and that those programs contain "certain" unspecified "guidelines" which supposedly created a duty owed by HSBC to Plaintiffs; they claim that HSBC willfully and/or recklessly breached those duties "to affected borrowers, including Plaintiffs;" and they claim that HSBC's "gross negligence per se" proximately caused them damage. Compl. ¶ 29. These allegations are precisely the type of "threadbare recitals," wholly lacking in "factual content," that fail to state a claim for relief under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678. *See also Howard*, 346 Fed. Appx. at 51. Accordingly, Count 4 of Plaintiffs' complaint should be dismissed.[4]

### c. Count 5 – Breach of Contract (Third Party Beneficiary)

In Count 5, Plaintiffs allege that HSBC entered into "certain contractual agreements with supervising federal agencies" to provide loan modification relief for the class of which Plaintiffs were a member and under which Plaintiffs were third-party beneficiaries. Compl. ¶ 33. HSBC allegedly breached these contracts causing damage to Plaintiffs. *Id.* However, the complaint contains no indication of the terms of the alleged contracts, the federal agencies that HSBC

---

[4] In their response brief [9], Plaintiffs make a reference to the Fair Debt Collection Practices Act, which is codified at 15 U.S.C. § 1692, et seq. (the "FDCPA"). To the extent this can be construed as an attempt to raise a substantive FDCPA claim, again Plaintiffs have failed to provide sufficient factual averments to support such a claim. Plaintiffs appear to claim that HSBC violated 15 U.S.C. §1692e(2), (8) and (10). Those provisions prohibit "debt collectors" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" including "the character, amount, or legal status of any debt." 15 U.S.C. § 1692(e). Yet Plaintiffs do not adequately allege that HSBC was acting as a "debt collector" under Section 1692a(6) of the FDCPA, rather than as a creditor. Nor do they provide any factual detail whatsoever about any alleged "false representations" or "threatening communications" by HSBC. Finally, the law is clear that merely asserting that the amount owed was wrong is not actionable if it was not connected with a collection attempt. *Grden v. Leikin, Ingber & Winters PC*, 643 F. 3d 169, 173 (6th Cir. 2011). This is because "an animating purpose of the communication must be to induce payment by the debtor." *Id.* (citing *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385 (7th Cir. 2010)). Here, Plaintiffs do not present any allegations respecting these required elements of an FDCPA claim.

contracted with, or how HSBC breached the contracts. As with their other breach of contract claims, Plaintiffs have provided nothing but a threadbare recital of the elements for a breach of contract claim and therefore this claim should be dismissed. *See Iqbal*, 556 U.S. at 678. *See also, supra* at 8. Moreover, under Michigan law, to state a third-party beneficiary claim, the Plaintiffs must plead and prove that the contracting parties, *i.e.*, the unspecified "federal agencies" and HSBC, specifically intended for Plaintiffs to benefit from their agreement. M.C.L. § 600.1405; *Koenig v. City of South Haven*, 460 Mich. 667, 680 (1999). Plaintiffs make no such allegations in their complaint, and simply offer the legal conclusion that they "were third party beneficiaries." Compl. ¶ 33. Accordingly, Plaintiffs' third-party beneficiary claim should be dismissed. *Iqbal*, 556 U.S. at 678.

### d. Count 6 – Promissory Estoppel

To state a promissory estoppel claim under Michigan law, a plaintiff must allege and show: (1) a promise; (2) intended to induce the plaintiff's reliance; (3) actual reliance; (4) and damages caused by that reliance. *Essroc Cement Corp. v. CPRIN, Inc.*, 2009 WL 2033052, at *14-16 (W.D. Mich., July 9, 2009). Indeed, the "sine qua non of promissory estoppel is a promise that is definite and clear." *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 442 (1993). Promissory is a narrow doctrine which applies only "where the facts are unquestionable and the wrong to be prevented undoubted." *Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 687 (1999). In Count 6, Plaintiffs attempt to meet these standards by alleging that HSBC made "certain representations and promises of and concerning Loan Modification relief" which were calculated to, and did, induce Plaintiffs' reliance, and that they were damaged as a result. Compl. ¶ 34. But these allegations clearly do not satisfy the requirements explained above. Plaintiffs allege no facts indicating the content of the alleged

promises and representations, how they were made, who made them, or when they were made. Far from showing the "definite and clear" promise required, Plaintiffs have offered only a recital of the elements and legal conclusions unaccompanied by any factual support whatsoever. Accordingly, this claim should be dismissed. *Iqbal*, 556 U.S. at 678.[5]

### e. Count 7 – Slander of Credit and False Light

In Count 7, Plaintiffs assert two separate causes of action: slander of credit and invasion of privacy – false light arising out of dissemination of "derogatory statements concerning Plaintiffs' creditworthiness" without justification to a large audience. Compl. ¶ 37. The slander of credit claim should be dismissed because no such cause of action has been recognized under Michigan law. *See Robbins v. Mortgage Electronic Registration Systems, Inc.*, 2009 U.S. Dist. LEXIS 104101, *20-21 (W.D. Mich. November 9, 2009).

Plaintiffs' false light invasion of privacy claim should also be dismissed because they have failed to allege any of such a claim's essential elements. To state such a claim in Michigan, a plaintiff must allege: (1) publication of a false statement harmful to another's interest; (2) the intention that the publication cause harm, recognition of likely harm, or negligence to likely harm; and (3) knowledge that the statement is false or reckless disregard to its veracity. *See Kollenberg v. Ramirez*, 339 N.W.2d 176, 179 (1983). Importantly, these elements must be "specifically pleaded, including the allegations with respect to the defamatory words and the publication of the defamatory words." *Gonyea v. Motor Parts Federal Credit Union*, 192 Mich. App. 74, 77 (1991) (citing *Ledl v. Quik Pik Food Stores, Inc.*, 133 Mich. App. 583, 589 (1984).

---

[5] As discussed above, M.C.L. § 566.132(2) bars all actions against financial institutions based on alleged oral agreements to lend money or grant a financial accommodation (including specifically, a modification). Accordingly, to the extent Plaintiffs' promissory estoppel claim rests on an oral promise to provide them with a loan modification, their claim would also be barred by the statute of frauds. *See supra* at 9-10.

13

Plaintiffs merely state that HSBC "made false and/or misleading derogatory statements concerning Plaintiff's creditworthiness and/or compliance with agreements…" and later "published and disseminated" those statements "nationwide." Compl. ¶ 37. They do not identify the alleged derogatory statements, nor offer any facts which would show that such statements were false or misleading. Nor do they identify who made the statements, when the statements were made, or to whom they were made. This is insufficient to survive HSBC's 12(b)(6) motion to dismiss. *See Ross*, 2013 WL 5291671, at *7).[6] Moreover, as in *Ross*, Plaintiffs here seem to admit that they actually did default on their mortgage payment obligations [9 at 6 (referencing a "foreclosure" on the property in question)], and thus they cannot allege that HSBC portrayed them in a false light by reporting that information. *Ross,* at *7.

### *f. Count 8 – Tortious Interference with Business Relations*

In Count 8, Plaintiffs claim tortious interference with business relations. Under Michigan law, a plaintiff asserting such a claim must allege: "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy by the interferer, (3) an intentional and wrongful interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage to the party whose relationship or expectancy was disrupted." *P.T. Today, Inc. v. Comm'r of Office of Fin. & Ins. Servs.*, 270 Mich. App. 110, 148 (2006) (citing *Badiee v. Brighton Area Schools*, 695 N.W.2d 521 (Mich. Ct. App 2005)). Moreover, "one who alleges tortious interference with a contractual or business relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business

---

[6] As with their breach of contract claims, Plaintiffs' allegations with respect to their false light invasion of privacy claim are virtually (if not exactly) identical to the ones made by the plaintiff in *Ross*.

14

of another." *Formall, Inc. v. Community Nat. Bank of Pontiac*, 166 Mich. App. 772, 779 (1988) (quoting *Feldman v. Green*, 138 Mich. App. 360, 369 (1984). Further, he must allege affirmative facts that "demonstrate, with specificity, affirmative acts by the interferer which corroborate the unlawful purpose of the interference." *Id.* at 292-93. Plaintiffs' allegations do not meet these requirements.

According to the complaint, HSBC's publication of false or misleading statements regarding Plaintiff's creditworthiness and noncompliance with agreements "permanently impaired the ability of Plaintiff[s] to conduct future business with third party lenders," both ones "with whom Plaintiff has had existing relationships…[and ones] with whom Plaintiff prospectively had or could have had relationships." Compl. ¶ 39. These allegations do not identify any actual third-parties whose relationships with Plaintiffs were interfered with, let alone that HSBC was actually aware of those relationships. Nor do Plaintiffs allege any per se wrongful behavior by HSBC or any affirmative facts indicating unlawful purpose. The allegations merely indicate that HSBC published inaccurate (but unidentified) statements that harmed Plaintiffs' business relationships. This does not state a claim for which relief can be granted. *Ross*, 2013 WL 5291671, at *8.[7]

### g. Count 9 – Fraudulent Enforcement of Note

In Count 9, Plaintiffs claim fraud, alleging that: (1) HSBC "failed to establish a cognizable chain of title to support its claimed mortgage interest and/ or interest as a note holder in due course;" and (2) HSBC relied on fraudulently-executed or fraudulently-issued documents purporting to assign an interest in the mortgage and note. Compl. ¶ 41. Plaintiffs also claim that as a result of these actions, HSBC lacks standing to enforce the note against Plaintiffs. To state a *prima facie* claim of fraud under Michigan law, a plaintiff must allege and establish that:

---

[7] Once again, Plaintiffs allegations in this action are identical to the ones in *Ross* which were determined to be legally insufficient.

> (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury.

*Roberts v. Saffell*, 280 Mich. App. 397, 403 (2008). Moreover, when pleading fraud, Federal Rule of Civil Procedure 9(b)'s heightened pleading standards apply, and require the plaintiff to "state with particularity the circumstances constituting fraud or mistake." To satisfy this particularity requirement, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 569-70 (6th Cir. 2008) (internal quotation marks and citation omitted); *see also Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) ("As a sister circuit has phrased it," Rule 9(b) requires a plaintiff to "specify the 'who, what, when, where, and how' of the alleged fraud.") (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir.1997)) Plaintiffs' allegations do not plead the basic elements of a fraud claim, let alone satisfy the heightened pleading standards just described.

Plaintiffs do not identify any actual alleged false or fraudulent statements, and make no allegation that HSBC knew any representations it made were false or that it made them recklessly. Nor do Plaintiffs allege that they relied on HSBC's representation. At most, Plaintiffs have alleged that HSBC claimed things that were not true that caused Plaintiffs damage. This clearly does not state a claim for fraud.[8] *Frank*, 547 F.3d at 569-70.

---

[8] Although HSBC did not attach to its papers any documentation related to its relationship with Plaintiffs, it did attach a copy of this Court's order dismissing Plaintiffs' prior action, which noted that, "According to the documents attached to Plaintiffs' Complaint, [their note] is presently held by HSBC Mortgage." Case No. 12-14706, Dkt. #18 at 4. Assuming this is the

*2. The Court Should Deny Leave to Amend*

In response to HSBC's Motion to Dismiss, Plaintiffs argue that they are entitled to amend their complaint as a matter of course. (Pl.'s Resp. to Mot. Summ. J. 3). They are incorrect, and even construed as a motion for leave to amend, that motion should be denied. Fed. R. Civ. P. 15(a)(1) provides that, "A party may amend its pleading once as a matter of course within: **(A)** 21 days after serving it, or **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Otherwise, a party may amend only with the opposing party's written consent or the Court's leave. *See* Fed. R. Civ. P. 15(a)(2). Although such leave should be freely given "when justice so requires," *id.*, a court should deny a motion to amend "if the amendment is brought in bad faith, for dilatory purposes, results in undue delays or prejudice to the opposing party or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. V. Dep't of Treasury, State of Michigan, Revenue Div.*, 987 F.2d 376, 382-83 (6th Cir. 1993)).

Here, rather than filing a responsive pleading, HSBC filed (and served) its instant 12(b)(6) motion to dismiss on June 5, 2013. [4]. Thus, under Fed. R. Civ. P. 15(a)(1)(B), Plaintiffs had 21 days thereafter to file an amended complaint as of right.[9] Plaintiffs did not file

---

case, then, under *Livonia Properties Holdings, LLC v. 12480-12976 Farmington Road Holdings, LLC*, 399 Fed. Appx. 97, 102 (2010), Plaintiffs would lack standing to challenge the assignment on which their fraud claims appear to be based.

[9] Plaintiffs' position that they may amend as of right because HSBC's instant motion is not a "responsive pleading," is incorrect. As shown above, the 21-day deadline for filing such an amendment expires "21 days after service of a responsive pleading ***or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.***" Fed. R. Civ. P. 15(a)(1)(B)

17

an amended complaint within the allowable timeframe, and therefore they may only amend with HSBC's written consent or leave of the Court. Fed. R. Civ. P. 15(a)(2).

Although leave to amend should generally be freely given, Plaintiffs' request here should be denied for a number of reasons. First, although Plaintiffs make a general request to amend, they did not provide a proposed amended complaint (in violation of E.D. Mich. LR 15.1), and do not suggest an ability or desire to amend their complaint in a way that will address the shortcomings discussed above. Indeed, Plaintiffs' complaint seems to mostly assert allegations made in the *Ross* case. Their subsequent filings only addressed their incorrect argument that they should be allowed to amend as of right, and reiterated their unsupported claim that HSBC "lack[s] a legitimate interest in the [note]" as a result of some unspecified "fraud." [9 at 6, 8].

The only new substantive legal matters raised relate to a proposed FDCPA claim [*id.* at 7], which the Court found above suffers from the same pleading failures as Plaintiffs' other claims. *See supra*, fn. 5. Yet, motions for leave to file an amended complaint under Rule 15(a) are governed by Fed. R. Civ. P. 7(b) which requires a motion to state the grounds upon which it is made in particularity. *See Evans v. Pearson Enters., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006); *White v. SmithKline Beecham Corp.*, 538 F. Supp. 2d 1023, 1031 (W.D. Mich. 2008). Plaintiffs' filing clearly does not meet this standard, and for the foregoing reasons, justice does not require that they be given an opportunity to file an amended complaint. Accordingly, the Court should exercise its discretion and deny the request to amend. *Evans*, 434 F.3d at 853.

### III. CONCLUSION

For the forgoing reasons, **IT IS RECOMMENDED** that HSBC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) **[4]** be **GRANTED**.

---

(emphasis added).

| | |
|---|---|
| Dated: January 13, 2014<br>Ann Arbor, Michigan | s/David R. Grand<br>DAVID R. GRAND<br>United States Magistrate Judge |

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge. A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

s/Felicia M. Moses<br>FELICIA M. MOSES<br>Case Manager

Dated: January 13, 2014